## SECURITY TRUST CO.

### v.

## DEPARTMENT OF REVENUE et al.

Court of Appeals of Kentucky.

Dec. 18, 1953.

Robert E. Hatton, Louisville, for appellant.

J. D. Buckman, Atty. Gen., Hal Williams, Jr., William E. Scent, William S. Riley, Asst. Attys. Gen., for appellee.

DUNCAN, Justice.

For the purpose of fixing situs for the imposition of ad valorem and death taxes, we are required to determine whether certain Building Trust certificates should be properly classified as real estate or intangible personal property. The Chancellor upheld the contention of the Department of Revenue and adjudged the certificates to be intangible personalty with taxable situs at the domicile of the owners. The case is one of first impression in Kentucky.

The appellant represents, in an agency or fiduciary capacity, estates and trusts which own the two types of certificates involved. The Bankers Building Land Trust certificates were issued under a trust indenture by the National Bank of the Republic of Chicago, which we shall refer to as the "Chicago Trust." The other certificates were issued under a trust agreement by the First National Bank of Boston, Massachusetts, which we will designate for the purpose of this opinion as the "Boston Trust."

In the Chicago Trust, Ernest A. Jackson and wife, by deed dated June 1, 1926, conveyed title to certain real property in Chicago, Illinois, to the National Bank of the Republic of Chicago. The property so conveyed was subject to a 99-year lease to the Adam-Clark Building Corporation, an Illinois corporation. Simultaneously with the execution and delivery of the deed, the grantee entered into an agreement and declaration of trust whereby the trustee undertook as follows:

"The trustee hereby declares that it will hold as trustee, upon the trust hereinafter set forth, for the use and benefit of all present and future holders of the certificate of equitable ownership issued hereunder (hereinafter sometimes called 'land trust certificates'), the title acquired by the trustees by a certain deed * * *."

Forthwith, the trustee issued to Ernest A. Jackson (one of the grantors) 5,000 shares, or certificates, each representing one five-thousandth of the full beneficial interest in the trust estate.

The Boston Trust was created as a result of a deed dated February 1, 1928, wherein the Insurance Building Corporation conveyed certain real estate in Boston, Massachusetts, to the First National Bank of Boston. The property conveyed was subject to a 99-year lease to the Insurance Building Corporation, and the lessee had the right under the lease to purchase the entire property for the sum of $2,090,000. Upon receipt of the deed, the agreement and declaration of trust was entered into whereby:

"The trustee hereby declares that it will hold as trustee, upon a trust hereinafter set forth, for the use and benefit of all present and future holders of the certificate of equitable ownership issued hereunder (hereinafter sometimes called 'land trust certificates'), the title acquired by the trustee under a certain deed to the trustee * * *."

The trustee immediately issued to the Insurance Building Corporation 1900 shares, or certificates, each representing one nineteen-hundredth of the full beneficial interest in the trust estate.

The form of the certificate in each case is practically identical, and each provides the manner and form in which transfer may be made. The form of the transfer, in its legal effect, resembles a deed and requires acknowledgment and joinder of the husband or wife if the owner of the certificate be a married person.

To avoid violation of the rule against perpetuities, both trust instruments provide that the trust, if not sooner terminated, shall terminate twenty years after the last to die of several named persons. They further provide that the trustee, upon termination of the trust, shall, in his discretion, either convey the legal title to the certificate holders in proportion to the equitable interest represented by their certificates, or sell the property and distribute the proceeds in the same proportion.

Appellant argues that since the trust res is real estate, the beneficial interest represented by the certificates is necessarily real property. The Department of Revenue concedes that the beneficiary's interest in an ordinary real estate trust is real property but insists that the transaction with which we are dealing is not an ordinary real estate trust.

Appellant relies principally on Senior v. Braden, 295 U.S. 422, 55 S.Ct. 800, 79 L.Ed. 1520, 100 A.L.R. 794. There, the Supreme Court, through Justice McReynolds, with Justices Stone, Brandeis, and Cardozo dissenting, held that certificates in the Chicago Trust, as well as similar certificates representing a beneficial interest in real estate situated in Ohio, were real property and not subject to a local ad valorem tax against intangible personal property held by residents of that state. The majority opinion is not clear as to the specific grounds upon which the court based its conclusion, but a reading of the dissenting opinion by Justice Stone would indicate that: (1) taxation of certificates representing interests in out-of-state real estate was deemed prohibited on theories relating to interstate double taxation; (2) taxation of certificates representing interests in Ohio real estate was considered violative of the uniformity requirements of the Federal Constitution. On both points, the holding in the Braden case has been indirectly overruled, and we are not bound by its authority.

On the uniformity question, it was unequivocally established by the Supreme Court in Nashville C. & St. L. Ry. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, that uniformity in state taxation is not required by any provision of the Federal Constitution. On the question of double taxation, it was determined in Curry v. McCanless, 307 U.S. 357, 59 S.Ct. 900, 83 L.Ed. 1339, and State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1359, that there was no Federal constitutional immunity from taxation of intangibles by more than one state.

An examination of the certificates and the trust agreements indicates that the holders of the certificates own nothing more than a right to share proportionately in the net rents received from the property held in trust, and the right at the expiration of the trust to receive title to the trust property as tenants in common or in the event of its sale to receive their proportion of the purchase price after payment of expenses. Certain incidental rights are also conferred, such as the right to resort to equity, to require an accounting, or compel performance of the trust.

The holders of the certificates have no right to possession or partition of the trust property, and can maintain no action at law with respect to it. They cannot be assessed, and incur no liability by virtue of the administration of the trust estate. The certificates are freely transferable, and the rights of the holders are so identified with the certificates that they may be transferred only on surrender of the certificates to the trustee. They are freely sold and traded on the security market, which carries daily quotations of their market value.

It is apparent that the holders of the certificates are clothed with none of the legal incidents of ownership. The rights which they hold are in personam, enforceable against the trustee, rather than in rem against the trust property. As pointed out in the dissenting opinion of Justice Stone in Senior v. Braden, supra, the holder of the certificate in every practical aspect stands in the same relationship to the land as the stockholder of a land-owning corporation.

We think the certificates constitute intangible personal property and that as such they are liable for local ad valorem and death taxes when owned by a person domiciled in Kentucky.

The judgment is affirmed.